

FILED & JUDGMENT ENTERED

Christine F. Winchester

March  14  2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Ashley A. Edwards_
Ashley Austin Edwards
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: <br><br> **Martinez Quality Painting & Drywall, Inc.,** <br><br>   Debtor. | Case No. 22-30357 <br> Chapter 11 |
| In re: <br><br> **Martinez Quality Painting & Drywall, Inc.** <br><br>   Plaintiff, <br><br> v. <br><br> **Newco Capital Group VI, LLC** <br><br>   Defendant. | Adv. Proc. No. 24-03039 |

## <u>ORDER AND OPINION ON MOTION TO DISMISS</u>

**THIS MATTER** is before the Court upon the _Motion to Dismiss Complaint_ (the "<u>Motion</u>"), which was filed by Newco Capital Group VI, LLC (the "<u>Defendant</u>") on October 25, 2024. [D.I. 7]. Following a hearing on the Motion, the Court took the matter under advisement and now renders this order and opinion.

1

## BACKGROUND

### I.   <u>Complaint</u>[1]

Martinez Quality Painting & Drywall, Inc. (the "<u>Plaintiff</u>") filed the complaint that initiated this adversary proceeding on July 31, 2024 (the "<u>Complaint</u>"). [D.I . 1]. The Plaintiff "operated a commercial drywall and painting contractor completing projects in the southeast United States." The Defendant is a merchant cash advance ("<u>MCA</u>") lender that is incorporated in Delaware with a principal place of business in New York, New York. This adversary proceeding arises out of two MCA agreements between the Plaintiff and the Defendant (collectively, the "<u>Parties</u>").

On July 23, 2021, the Parties entered into a Revenue Purchase Agreement that provided for a "Purchase Price" of $250,000 to be paid by the Defendant in exchange for "Receivables Purchased" of $347,500 to be provided by the Plaintiff (the "<u>First MCA Agreement</u>"). In connection with the First MCA Agreement, among other ancillary agreements, the Plaintiff executed an ACH authorization, and the Plaintiff's insider executed a personal guaranty. In accordance with the terms of the First MCA Agreement, the Defendant received "at least $347,500" total in the form of daily withdrawals of $2,483 from the Plaintiff's bank account until the Receivables Purchased plus fees were recouped (collectively, the "<u>First MCA Transfer</u>"). The First MCA Agreement provides that the Defendant purchased 15% of the Plaintiff's receivables, but Plaintiff contends that the Defendant did not limit its sweep of the Plaintiff's bank account to actual receivables.

On November 4, 2021, the Parties entered into a second Revenue Purchase Agreement that provided for a "Purchase Price" of $325,000 to be paid by the Defendant in exchange for "Receivables Purchased" of $451,750 to be provided by the Plaintiff (the "<u>Second MCA</u>

---

[1] This "Complaint" section of the opinion recites the allegations set forth in the Complaint. These recitals do not constitute findings of fact or legal conclusions by the Court. Instead, the Court finds generally that these allegations are contained in the Complaint.

Agreement," and, together with the First MCA Agreement, the "MCA Agreements"). In connection with the Second MCA Agreement, among other ancillary agreements, the Plaintiff executed an ACH authorization, and the Plaintiff's insider executed a personal guaranty. In accordance with the terms of the Second MCA Agreement, the Defendant received "at least $451,750" in the form of daily withdrawals of $3,226 from the Plaintiff's bank account until the Receivables Purchased plus fees were recouped (collectively, the "Second MCA Transfer," and, collectively with the First MCA Transfer, the "Transfers"). The Second MCA Agreement provides that the Defendant purchased 15% of the Plaintiff's receivables, but the Defendant did not limit its sweep of the Plaintiff's bank account to actual receivables.

In total, the Plaintiff paid $799,250 to the Defendant pursuant to the MCA Agreements, while the Defendant paid $575,000 to the Plaintiff. The difference between these two amounts is $224,250 (the "Excess Amount"). The Plaintiff made the last payment to the Defendant under the MCA Agreements on April 13, 2022. Plaintiff contends in the Complaint that the Defendant (a) received significantly more money than the amount that it gave to the Plaintiff under the MCA Agreements; (b) failed to complete an accounting or due diligence or take steps to verify that the funds it swept were receivables under the MCA Agreements; (c) received payments to which the Defendant had no right under the MCA Agreements; (d) intentionally disregarded the reality of the Debtor's finances, which, if considered, would have impaired the Defendant's ability to recoup the funds it "loaned" to the Plaintiff; (e) knew or should have known that the Plaintiff was in financial distress; (f) did not conduct an investigation of the Plaintiff's supposed accounts debtors; and (g) was a Net Winner, as defined in the Plaintiff's confirmed Chapter 11 plan, [#22-30357, D.I. 141], meaning the Defendant received more value than it extended to the Plaintiff.

According to the Complaint, the MCA Agreements were disguised loan agreements that caused the Defendant to bear little to no risk of loss and gave the Defendant significant recourse rights against the Plaintiff and its principal. The Complaint provides that the MCA Agreements (1) are governed by New York law; (2) charged an annual rate of interest of 40% in violation of several usury laws, including New York Penal Law § 190.409 and New York General Obligations Law § 5-511; and (3) are void *ab initio* for violating these usury laws, meaning that the recovery of principal and interest by the Defendant under the MCA Agreements is prohibited. For these reasons, the Complaint brings claims under the Bankruptcy Code and the North Carolina General Statutes to (1) avoid the Transfers as actually and constructively fraudulent transfers and (2) recover the $799,250 allegedly paid by the Plaintiff to the Defendant.

## II.   Motion to Dismiss

On October 25, 2024, the Defendant filed the Motion arguing that the Complaint should be dismissed pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Defendant filed a brief in support of the Motion on November 13, 2024 (the "Supporting Brief"). [D.I. 10]. The Defendant primarily argues that the MCA Agreements (1) are not loans; (2) if considered to be loans, are not criminally usurious loans because the Plaintiff received reasonably equivalent value; and (3) are exempt from North Carolina usury law, which the Defendant asserts is the appropriate state law to apply when analyzing the MCA Agreements.

On January 21, 2025, the Plaintiff filed a brief in opposition to the Motion, arguing primarily that (a) the MCA Agreements and the Transfers can be avoided as constructively fraudulent transfers; (b) the Court has subject matter jurisdiction over the claims raised in the Complaint; (c) the MCA Agreements are governed by New York law, not North Carolina law, due to the choice of law provisions in the MCA Agreements; and (d) the choice of law provisions

4

should be enforced because the Defendant prepared the MCA Agreements, which include the Defendant's logo on the top of each of the MCA Agreements (the "Opposing Brief"). [D.I. 14].

On January 27, 2025, the Defendant filed a reply in support of the Motion primarily arguing that the Plaintiff is precluded and prohibited from invoking New York's Criminal Usury Statute (defined below) to argue that the MCA Agreements and Transfers are usurious, regardless of the characterization of the MCA Agreements and Transfers, even if New York law applied (the "Reply"). [D.I. 16]. The Reply cited a recent decision from the United States Bankruptcy Court for the Eastern District of North Carolina: *Azalea Gynecology, P.A. v. GFE NY, LLC (In re Azalea Gynecology)*, No. 24-00109-5-PWM (Bankr. E.D.N.C. Dec. 6, 2024). That decision was entered on December 6, 2024—just over a month after the Motion was filed and prior to the Hearing (defined below).

On January 28, 2025, the Court conducted a hearing on the Motion (the "Hearing"). John C. Woodman appeared on behalf of the Plaintiff. Joseph Z. Frost appeared on behalf of the Defendant. The Court permitted the Plaintiff to file a sur-reply by February 7, 2025, which deadline was subsequently extended by mutual consent of the Parties. On February 19, 2025, the Plaintiff filed the *Sur-Reply in Opposition to [the] Motion to Dismiss* (the "Sur-Reply"). [D.I. 18]. This Motion is now ripe for adjudication.

## DISCUSSION

### III.   <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

The Defendant moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Rule 12(b)(1) Motion"). The Fourth Circuit has articulated the following standard when evaluating motions under Rule 12(b)(1):

[A] defendant may challenge subject matter jurisdiction in one of two ways. First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

In the alternative, the defendant can contend . . . that the jurisdictional allegations of the complaint are not true. The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, a trial court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding. In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.

*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citations omitted).

In this case, the Defendant did not explain in the Motion, Supporting Brief, Reply, or at the Hearing, how or why this Court lacks subject matter jurisdiction over this adversary proceeding or the Complaint other than by restating the relevant legal standard. The Defendant also did not clarify whether it made a facial challenge to subject matter jurisdiction or whether it challenged the factual predicate of subject matter jurisdiction. The Plaintiff argues that this Court has subject matter jurisdiction over the claims raised in the Complaint under 28 U.S.C. §§ 157 and 1334, the Amended Standing Order of Reference issued by the United States District Court for the Western District of North Carolina (the "Amended Reference Order"),[2] and Article 13 of the Chapter 11 plan that was confirmed in the underlying bankruptcy case.

The Court will treat the Rule 12(b)(1) Motion as a facial challenge to subject matter jurisdiction because the Defendant has not specifically challenged the factual predicate of subject

---

[2] The Plaintiff, in the Opposing Brief, references the General Order of Reference that was entered on July 30, 1984. However, the current standing order of reference that applies to this Court is the Amended Reference Order, which was entered on April 14, 2014.

matter jurisdiction as set forth in the Complaint. The Court finds that the Complaint alleges sufficient facts to invoke subject matter jurisdiction. For these reasons, the Rule 12(b)(1) Motion shall be denied.

IV.    **Motion to Dismiss for Failure to State a Claim**

The Defendant also moved to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted); *see also E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted) (noting that a court ruling on a Rule 12(b)(6) motion should "draw all reasonable inferences in favor of the plaintiff"). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Plaintiffs "must plausibly allege facts that, if proven, would be sufficient to establish each element of the claim." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268–69 (4th Cir. 2022).

Although this Court is required to "take all of the factual allegations in the complaint as true," the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). Ultimately, the Defendant bears the burden to prove that the Plaintiff has failed to state a claim upon which relief can be granted. *Moore v. Berry (In re Moore)*, Nos. 20-31195-KLP, 21-03041-KLP, 2022 WL 839702, at *2 (Bankr. E.D. Va. Mar. 21,

2022) (citing *Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In re Fah Liquidating Corp.)*, 572 B.R. 117, 122 (Bankr. D. Del. 2017)); *Richland-Lexington Airport Dist. v. Atlas Props.*, 854 F. Supp. 400, 407 (D.S.C. 1994) (citing *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1408 (3d Cir. 1991)).

The Complaint contains six separate claims for relief. After considering which state law governs the MCA Agreements, the Court will address each claim in turn.

## A. <u>Controlling Law</u>

As a preliminary matter, the Court is asked to determine whether to apply New York or North Carolina law in its consideration of the claims for relief raised in the Complaint. The Parties appear to agree that (1) the MCA Agreements each contain a choice of law provision that selects New York law as the governing law for the MCA Agreements and (2) the result would be different depending on whether New York law or North Carolina law applies. The Defendant argues that the Court should not apply the choice of law provision because "[c]ontractual choice-of-law provisions are not sufficient to avoid application of North Carolina usury law, codified in Chapter 24 of the North Carolina General Statutes, to any loans or extensions of credit made to borrowers residing within the State of North Carolina." By acknowledging that (1) the Plaintiff allegedly operates in North Carolina and (2) North Carolina's usury laws do not apply to corporations in certain contexts, *see* N.C. Gen. Stat. § 24-9(a)(3), the Defendant argues that the MCA Agreements should be "exempt and excluded from any usury and interest rate limitations and requirements." The Defendant also argues that North Carolina law should be applied because "[t]he public policy of the State of North Carolina, codified in N.C. Gen. Stat. § 24-2.1 and applying to loans and extensions of credit to borrowers residing in the State of North Carolina, would override the contractual choice-of-law provisions in the MCA Agreement."

When considering a motion to dismiss, many courts are reluctant to engage in a choice of law analysis given the potentially fact-intensive inquiry. *See, e.g., Banner Life Ins. Co. v. Bonney*, No. 2:11cv198, 2011 WL 6002609, at *5 (E.D. Va. Nov. 29, 2011) (declining to engage in choice of law analysis at motion to dismiss stage) *and Graboff v. Collern Firm*, No. 10-1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 5, 2010) ("[A] choice of law analysis is premature [when considering a Rule 12(b)(6) motion] because the record lacks necessary facts for the Court to conduct the fact-intensive, context-specific analysis required by [state] law."). For this reason, it is often necessary to defer whether to enforce a contractual choice of law provision to a later stage in the proceeding. *See N. Am. Tech. Servs. v. V.J. Techs., Inc.*, Civil Action No. 10 CV 1384 (AWT), 2011 WL 4538069, at *2 (D. Conn. Sep. 29, 2011) (quoting *Graboff*, 2010 WL 4456923, at *8). If a court defers the choice of law analysis to a later proceeding, the court may apply the choice of law as alleged in the Complaint under the Rule 12(b)(6) standard. *See, e.g., Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citation omitted) (declining to engage in choice of law analysis when considering Rule12(b)(6) motion to dismiss and applying New Jersey law as alleged in the complaint).

A "bankruptcy court applies the choice of law rules of the state in which it sits." *Hovis v. Gen. Dynamics Corp. (In re Marine Energy Sys. Corp.)*, 299 F. App'x 222, 227 (4th Cir. 2008) (quoting *Amtech Lighting Servs. v. Payless Cashways, Inc. (In re Payless Cashways)*, 203 F.3d 1081, 1084 (8th Cir. 2000)). This Court sits in the Western District of North Carolina and applies North Carolina's choice of law rules. "As a general rule, North Carolina courts will give a contractual choice of law provision effect unless [a][1] the chosen state has no substantial connection to the transaction and [2] there is no other reasonable basis for the parties' choice, or [b] the law of the chosen state violates a fundamental public policy of North Carolina." *Vizant*

*Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 556 (2020) (citation omitted) (adopting the analysis set forth in the Restatement (Second) of Conflict of Laws § 187(2) (1971)).

As alleged in the Complaint, Paragraph 4.5 of each MCA Agreement provides that the

Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums, attachments, exhibits, and other documents relating to this Agreement in any way, *shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law.* Any suit, action or proceeding arising hereunder or the interpretation performance or breach hereof shall, if NCG so elects, be instituted in any court sitting in New York (the "Acceptable Forums"). All Parties to this Agreement, including but not limited to, Merchant, Guarantor(s), Corporate Guarantor(s) Merchant and Guarantor(s) that the Acceptable Forums are convenient to it and submit to the Jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant and Guarantor(s) waives any right to oppose any motion or application made by NCG to transfer such proceeding to an Acceptable Forum.

MCA Agreements, ¶ 4.5 (emphasis added). While this paragraph appears in the middle of the MCA Agreements, a nearly identical provision appears again at the end of both MCA Agreements.

Still, applying the exceptions set forth in *Vizant Technologies* to the use of the contractual choice of law provision in this case would require a factually intensive inquiry. For example, the first exception under the *Vizant Technologies* standard, regarding whether a "substantial connection" exists, may require considering "if the contract is made in the state attempting to exercise jurisdiction." *See Liberty Fin. Co. v. N. Augusta Comput. Store, Inc.*, 100 N.C. App. 279, 285 (1990) (citation omitted); *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365 (1986) ("[A] contract is made in the place where the last act necessary to make it binding occurred." (citation omitted)). The second exception requires considering whether there is a reasonable basis for parties' choice of law in the agreement, which could be true if a contract party's principal place of business is within the chosen state. *See IPayment, Inc. v. Grainger*, 257 N.C. App. 307, 312 (2017). The last exception under *Vizant Technologies* requires considering whether the choice of

law provision violates North Carolina's fundamental public policy, such as by violating a statute. *See Troublefield v. Automoney, Inc.*, 284 N.C. App. 494, 506–07 (2022) (quoting *Glover v. Rowan Mut. Fire Ins. Co.*, 228 N.C. 195, 198 (1947)); *see also Torres v. McClain*, 140 N.C. App. 238, 243 (2000) (quoting *Boudreau v. Baughman*, 322 N.C. 331, 340 (1988)) ("The courts of North Carolina have been reluctant to find that the law of another state violates [their] public policy absent a showing that the law violates 'some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state.'"); N.C. Gen. Stat. § 24.1(g) (emphasis added) ("It is the paramount public policy of North Carolina to *protect* North Carolina resident borrowers through the application of North Carolina interest laws.").

As this line of cases makes evident, the inquiry into whether to apply the choice of law provision contained in the MCA Agreements is particularly fact intensive and context specific. Given the multi-factor *Vizant Technologies* test that is used by courts in North Carolina, this Court cannot meaningfully engage in the choice of law analysis without the benefit of discovery. Therefore, the Court declines to engage in the choice of law inquiry until after a factual record is developed. For purposes of this Motion, the Court will accept the allegations set forth in the Complaint as true when considering which state's law to apply.

## B. First and Third Claims for Relief

The first claim for relief in the Complaint is titled "Avoidance of Constructively Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(B)," and the third claim for relief is titled "Obligations Incurred Under the MCA Agreements – 11 U.S.C. § 548(a)(1)(B)." Both claims are based on alleged "constructively fraudulent transfers." "Section 548 [of the Bankruptcy Code] defines a constructively fraudulent transfer . . . as one where (1) the debtor was insolvent, and (2) the debtor received 'less than a reasonably equivalent value in exchange.'" *French v. Liebmann (In re*

*French*), 440 F.3d 145, 150 (4th Cir. 2006) (quoting 11 U.S.C. § 548(a)(1)(B)).[3] The trustee or

debtor-in-possession may avoid a constructively fraudulent transfer "that was made or incurred on

or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1).

Here, the Complaint alleges that (1) the Transfers made under the MCA Agreements

occurred within two years before the date the Debtor filed the bankruptcy petition on August 1,

2022 (the "Petition Date"); and (2) the "Debtor was insolvent or became insolvent as a result of

each [t]ransfer," which is a requirement for a claim pursuant to section 548 of the Bankruptcy

Code. At this motion to dismiss stage and for purposes of the section 548 analysis, the Court takes

as true both the two-year time frame of the Transfers and the insolvency of the Plaintiff at the time

of the Transfers.

Thus, the only outstanding element for a claim under section 548, is whether the Plaintiff

received less than a reasonably equivalent value in exchange for the Transfers. The Defendant

argues that the Plaintiff has failed to plead this element because the MCA Agreements are not

criminally usurious loans and, therefore, are enforceable contracts that are not void *ab initio*. Even

if the Court were to find the MCA Agreements and Transfers thereunder are loans, the Defendant

argues that North Carolina law applies and that North Carolina law does not prohibit such

transactions because North Carolina usury laws do not apply to agreements between corporations.

As a preliminary matter, the Complaint alleges that the MCA Agreements and Transfers thereunder

constitute loans rather than sales, so the Court will treat them as loans for purposes of this analysis.

---

[3] In addition to being insolvent, section 548 allows the Debtor to plead in the alternative that the Debtor "(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. § 548(a)(1)(B)(ii). Here, the Debtor also pled elements (II) and (III).

1. <u>**Usury under New York Penal Law**</u>

The Defendant is correct that, given the facts in this case, attempting to avoid the MCA Agreements through the Criminal Usury Statute (defined below) is not an appropriate basis to argue a lack of reasonably equivalent value. Under section 190.40 of the New York Penal Law (the "<u>Criminal Usury Statute</u>"), a corporation may only invoke criminal usury as an affirmative defense to the enforcement of a usurious contract and may not seek affirmative relief under that statute. *See Azalea Gynecology, P.A. v. GFE NY, LLC (In re Azalea Gynecology)*, No. 24-00109-5-PWM, slip op. at 7 (Bankr. E.D.N.C. Dec. 6, 2024); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022) (citing *Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 192 A.D.3d 1040, 1041 (N.Y. App. Div. 2021)).

Corporations may only use the Criminal Usury Statute as a shield, not as a sword. *See Azalea Gynecology*, No. 24-00109-5-PWM, slip op. at 7. The *Azalea Gynecology* court considered whether to apply the Criminal Usury Statute in the analysis of reasonably equivalent value under section 548 of the Bankruptcy Code. In *Azalea Gynecology*, prior to a plan of reorganization being confirmed in that case, the Chapter 11 debtor initiated an adversary proceeding against an MCA lender seeking a declaratory judgment finding that the MCA agreement between the two was criminally usurious and void *ab initio* under New York's Criminal Usury Statute because the 54.75% effective interest rate under the agreement exceeded the 25% interest rate permitted by the Criminal Usury Statute. *Id.* at 5–6. The defendant in *Azalea Gynecology* filed a motion to dismiss, arguing that, "first, North Carolina law, not New York law, controls, rendering the interest rates non-usurious; and second, even if New York law controls, [the plaintiff] may not assert an *affirmative claim* for criminal usury." *Id.* at 2 (emphasis added). Instead, the defendant argued "that usury may only be asserted as a *defense* under New York Law." *Id.* at 7 (emphasis added).

The *Azalea Gynecology* court did not reach the question of whether to apply North Carolina or New York law because it found that (1) the complaint failed under New York law, which was the state law that the complaint sought to apply; and (2) the claims rested upon an "affirmative determination" that the MCA agreement was void under the Criminal Usury Statute, rather than using such statute as an affirmative "defense." *See id.* at 2, 6, 8. Because there was no "basis upon which [the plaintiff] could assert criminal usury defensively," the court found that the claims failed as a matter of law and had to be dismissed. *See id.* at 8. The *Azalea Gynecology* court noted that the defendant had not filed a proof of claim, but if it had, "the result might be different." *Id.* at 8, 8 n.1.

The facts in this case are similar to those in *Azalea Gynecology*. In the case at hand, (a) the Defendant did not file a proof of claim; (b) the Defendant did not participate in or engage in other offensive gestures against the Plaintiff in the underlying bankruptcy case; and (c) the requirements under the MCA Agreements were fully satisfied, meaning the Defendant was not a creditor at the time of the Plaintiff's bankruptcy case.[4] Given these specific facts, the Plaintiff has no basis to use the Criminal Usury Statute as an affirmative defense, and the Complaint improperly invokes the Criminal Usury Statute to obtain affirmative relief against the Defendant—specifically, to have the MCA Agreements deemed void *ab initio* and to recover the Transfers. Because, as in *Azalea Gynecology,* the Plaintiff seeks to use the Criminal Usury Statute as a sword rather than as a shield, the references to the Criminal Usury Statute are improper and cannot be used to argue that the

---

[4] There was no need for the Defendant to file a proof of claim or to otherwise engage in the case offensively since the Defendant had been paid in full under the MCA Agreements.

MCA Agreements were void and therefore that the Debtor received less than a reasonably equivalent value in exchange for the Transfers.[5]

### 2. <u>Usury under New York General Obligations Law</u>

However, the Defendant ignores a key allegation in paragraph 66 of the Complaint: that the MCA Agreements are void *ab initio* under New York General Obligations Law § 5-511. That law provides that, with certain exceptions, "[a]ll bonds, bills, notes, assurances, conveyances, *all other contracts* or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, *shall be void . . . .*" N.Y. Gen. Oblig. Law § 5-511(1) (emphasis added). In this case, the Complaint and Sur-Reply explicitly raise section 5-511 of the New York General Obligations Law as a basis for determining that there was no reasonably equivalent value exchanged under the MCA Agreements.

While corporations may not "interpose the defense of [civil] usury in any action," N.Y. Gen. Oblig. Law § 5-521(1), "[t]he legislature provided no exceptions to the voiding of usurious loans if the borrower is a corporation." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 333 (2021); *see Crystal Springs Cap., Inc. v. Big Thicket Coin, LLC*, 220 A.D.3d 745, 746 (N.Y. App. Div. 2023) (citing *Adar Bays, LLC*, 37 N.Y.3d at 332); *Welz v. Brown*, 228 A.D.3d 416, 417 (N.Y. App. Div. 2024) (citing *Adar Bays, LLC*, 37 N.Y.3d at 324) (holding that a usurious loan is "void and unenforceable" "at its inception"). Taking the facts as true and construing reasonable

---

[5] As was noted in *Azalea Gynecology*, the Court may have reached a different conclusion if the Defendant had filed a proof of claim or taken other affirmative action against the Plaintiff in this case. *See Azalea Gynecology, P.A. v. GFE NY, LLC (In re Azalea Gynecology)*, No. 24-00109-5-PWM, slip op. at 8 n.1 (Bankr. E.D.N.C. Dec. 6, 2024).

inferences in favor of the Plaintiff, it is plausible that the Plaintiff may show (1) a lack of reasonably equivalent value under New York law and, consequently, (2) that the Transfers or portions thereof were constructively fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code.

Therefore, as to the first and third claims for relief in the Complaint, the motion to dismiss under Rule 12(b)(6) is granted without leave to amend as it relates to the Criminal Usury Statute and denied as to the remainder of the first and third claims for relief. For clarity, the Plaintiff may not use the Criminal Usury Statute to argue that the MCA Agreements or Transfers are void, but the Plaintiff may argue that there is a lack of reasonably equivalent value on another basis set forth in the Complaint, including under section 5-511 of the New York General Obligations Law.

### 3. Recovery of Constructively Fraudulent Transfer

While the Complaint alleges sufficient facts to plausibly state a constructively fraudulent transfer claim under section 548 of the Bankruptcy Code, the Court does not decide at this stage the amount, if any, of any avoided transfers that may be *recovered*. Still, it is appropriate and necessary under the motion to dismiss standard for the Court to determine if the facts, taken as true, would be sufficient to establish each element under section 548—specifically, a lack of reasonably equivalent value. Fourth Circuit precedent provides specific guidance on how to determine the amounts of constructively fraudulent transfers that may be recovered under section 548.

"[R]easonably equivalent value is not susceptible to simple formation . . . . The focus is on the consideration received by the debtor, not on the value given by the transferee." *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Grp.)*, 956 F.2d 479, 484 (4th Cir. 1992) (citing Jack F. Williams, *Revisiting the Proper Limits of Fraudulent Transfer Law*, 8 Bankr. Dev. J. 55, 80 (1991)). "This is reflective of the fact that constructively fraudulent transfer law is essentially

concerned with preserving a debtor's net worth." *McCarthy v. 88 La Gorce, LLC (In re El-Atari)*, Nos. 09-14950-BFK, 11-01404, 2012 WL 404947, at *2 (Bankr. E.D. Va. Feb. 8, 2012). It is well established Fourth Circuit law under section 548 that the analysis for reasonably equivalent value requires considering the *net* benefit to the debtor and not simply the amount the debtor transferred to a certain party. *See Harman*, 956 F.2d at 485; *Field v. United States (In re Abatement Env't Res., Inc.)*, 102 F. App'x 272 (4th Cir. 2004)) (citing *Harman*, 956 F.2d at 485); *Bledsoe v. DeVos (In re Ferris)*, No. 18-04942-5-SWH, 2020 WL 3884735, at *3 (Bankr. E.D.N.C. July 9, 2020) (citing *Harman*, 956 F.2d at 484); *Terry Props., LLC v. Farm Credit of the Virginia, ACA (In re Terry Props., LLC)*, No. 16-71449, 2017 WL 507277, at *5 (Bankr. W.D. Va. Feb. 3, 2017), *aff'd*, No. 16-71449, 2017 WL 3736772 (W.D. Va. Aug. 30, 2017) (citing *Harman*, 956 F.2d at 485).

Following the Fourth Circuit analysis, this Court has set forth a two-part test to assess reasonably equivalent value under section 548: "(1) Did the debtor receive value, and (2) was the payment reasonably equivalent to the value extended?" *Smith v. DiSeveria (In re BK Racing, LLC)*, 2024 WL 1060972, at *16 (Bankr. W.D.N.C. Mar. 11, 2024) (citing *Cohen v. Un-Ltd. Holdings (In re Nelco, Ltd.)*, 264 B.R. 790, 813 (Bankr. E.D. Va. 1999). In the *BK Racing* case, there were no written loan documents between the debtor and the defendants, and the trustee contended that certain payments to the defendants were returns on equity, whereas the defendants argued that the payments were repayments of short-term informal loans. *Id.* at *17. The Court determined that the transfers were made in repayment of short-term loans and were "substantially equivalent to the amount of the Transfers," which therefore constituted "reasonably equivalent value" under section 548. *Id.* at *20.

Critically, for the analysis of reasonably equivalent value under section 548, the specific form of the transactions is superfluous; the Court need only look at the substance of the

transactions. 5 Collier on Bankruptcy ¶ 548.03[6] (Matthew Bender & Co., eds., 16th ed. 2022); *accord Boyer v. Crown Stock Distribution, Inc.*, 587 F.3d 787, 793 (7th Cir. 2009) (quoting Douglas G. Baird, *Elements of Bankruptcy* 153–54 (4th ed. 2006)) ("Fraudulent conveyance doctrine is a flexible principle that looks to substance, rather than form, and protects creditors from any transactions the debtor engages in that have the effect of impairing their rights . . . ."). In the case at hand, taking the factual allegations in the Complaint as true, the Debtor paid to the Defendant the Transfers in the total amount of $799,250. Even construing reasonable inferences in favor of the Debtor, the Complaint asserts that the Debtor received value from the Defendant in at least the amount of $575,000, as the combined "Purchase Price" under the MCA Agreements.

"In analyzing fraudulent conveyances, . . . the test is whether, as a result of the transaction[s], the debtor's estate was unfairly diminished." *Field*, 102 F. App'x at 279 (quoting Gerrard Glenn, *Fraudulent Conveyances and Preferences* § 275 (rev. ed. 1940)); *see Harman*, 956 F.2d 479 at 484. The Fourth Circuit in *Harman* provided that the bankruptcy estate, including unsecured creditors, would be paid twice if a bankruptcy court allowed a debtor to (1) receive the benefit of funds from a defendant for which the transfers sought to repay and then (2) recover the same amount of funds from an avoidable transfer action. 956 F.2d at 485 ("Otherwise, the creditors would receive not only the benefit of the money received from the draws on the lines of credit, but also the windfall of avoided transfers designed to repay the draws.").

It is imperative that the "focus is on the *net effect* of the transfers on the debtor's estate, [meaning] the funds available to the unsecured creditors." *Harman*, 956 F.2d 479 at 484 (emphasis added). "As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred." *Id.*; *see In re Johnson Bros. Truckers Inc.*, 9 Fed. App'x 156, 165 (4th Cir. 2001).

Although "[r]easonably equivalent value is not susceptible to simple formulation," *Harman*, 956 F.2d at 484, "[t]he essential examination is a comparison of 'what went out' with 'what was received.'" *Altman v. Underwood (In re Underwood)*, 22 Fla. L. Weekly Fed. B 202 (Bankr. M.D. Fla. 2009) (citation omitted). Therefore, at a minimum, Fourth Circuit precedent precludes the recovery of any value exceeding what the Plaintiff has already received from the Defendant under the MCA Agreements.

Under the MCA Agreements, the Defendant may have (1) purchased the "Purchase Receivables" or (2) had a valid contract with a fully secured interest in the receivables. In either situation, unsecured creditors would not be worse off. Additionally, pursuant to the Complaint, the Debtor received $250,000 on July 23, 2021, and then received $325,000 on November 4, 2021, from the Defendant. The Debtor relied on the $575,000 in funds to continue to operate and later filed for bankruptcy relief on the Petition Date. *See Miller vs. First Bank*, 206 N.C. App 166, 178–79 (2010) (applying *Harman* and determining that the benefit of using loan proceeds over time can support a finding of reasonably equivalent value, even if the amounts transferred between entities for a loan were not equal). The benefit to the Plaintiff of using these funds over time *may* show that there was reasonably equivalent value; or, at least, that may provide a partial justification for reducing the recovery to an amount less than the Excess Amount in an action under section 548.

Certain portions of the Transfers may exceed the appropriate market terms for this type of transaction, and therefore avoidable under section 548, which is a concept that the Court is familiar with. This Court previously determined, after extensive discovery, that when employees were substantially overpaid for work, the amount of the overpayment was an avoidable transfer and that "market value is an extremely important factor used in the assessment." *Ballantyne Brands, LLC*

*v. Wiesehan, Jr. (In re Ballantyne Brands, LLC)*, 656 B.R. 117 (Bankr. W.D.N.C. 2023) (citing *Cooper v. Ashley Commc'ns., Inc. (In re Morris Commc'ns NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990)). The factual inquiry into reasonably equivalent value requires more than simple math and the debtor does not need to collect dollar for dollar equivalent to have received reasonably equivalent value. *See Miller*, 206 N.C. App 166 (citing *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125–26 (5th Cir. 1993)).

In summary, although certain transactions may give reasonably equivalent value as a matter of law, reasonable equivalence generally is a matter of fact. *See Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 209 (5th Cir. 2003). This fact intensive inquiry often cannot be decided at the motion to dismiss stage based upon the pleadings. *See Kirschner v. Large S'holders (In re Tribune Co. Fraudulent Conveyance Litig.)*, 10 F.4th 147, 174 (2d Cir. 2021) (citing *A Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 271 (Bankr. S.D.N.Y. 2007) (declining to dismiss constructive fraudulent transfer claim given the complexities of the factual background in analyzing the "reasonably equivalent value"). In the case at hand, the Plaintiff has pled sufficient facts to raise a plausible claim under section 548 of the Bankruptcy Code to avoid some portion of the Transfers under the reasonably equivalent value standards, given the legal limitations cited herein. Fourth Circuit precedent demonstrates that the Excess Amount may be the maximum possible amount recovered under section 548, and any such recovery may be further reduced after considering the other factors discussed herein.

### C. <u>Second Claim for Relief</u>

The second claim for relief in the Complaint is titled "Avoidance of Constructively Fraudulent Transfers – N.C. Gen. Stat. § 39-23.1 *et seq*." This claim fails because it is brought under North Carolina law, which the Complaint specifically alleges does not govern the MCA Agreements. The Complaint provides no plausible basis to allow this claim to proceed under North

Carolina law. Instead, the Complaint alleges that New York law governs the MCA Agreements,

and the Plaintiff has consistently argued the same point throughout this proceeding. Therefore, the

motion to dismiss the second claim for relief under Rule 12(b)(6) is granted with leave to amend.

### D.  Fourth Claim for Relief

The fourth claim for relief is titled "Avoidance of Fraudulent Transfers – 11 USC [sic]

§ 548(a)(1)(A) Actual Fraud." That statute authorizes the trustee to

> avoid any transfer (including any transfer to or for the benefit of an insider under
> an employment contract) of an interest of the debtor in property, or any obligation
> (including any obligation to or for the benefit of an insider under an employment
> contract) incurred by the debtor, that was made or incurred on or within 2 years
> before the date of the filing of the petition, if the debtor voluntarily or involuntarily
> made such transfer or incurred such obligation with actual intent to hinder, delay,
> or defraud any entity to which the debtor was or became, on or after the date that
> such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1)(A). The Complaint does not allege sufficient facts to support a claim

that transfers were made, or that obligations were incurred, under the MCA Agreements by the

Plaintiff (the Debtor in this case) with the actual intent to hinder, delay, or defraud another entity.

In situations where a Debtor has "asked for, received, and then repaid" amounts, even under a

verbal loan agreement, this Court has refused to find that the transfers were done "with an intention

to hinder, delay and defraud its creditors." *See Smith v. DiSeveria (In re BK Racing, LLC)*, No. 18-

30241, 2024 WL 1060972, at *20 (Bankr. W.D.N.C. Mar. 11, 2024). Because the Complaint alleges

that this very conduct occurred between the Parties, there is no plausible basis to find that the

Defendant is liable under section 548(a)(1)(A). Therefore, the motion to dismiss the fourth claim

for relief under Rule 12(b)(6) is granted without leave to amend.

### E.  Fifth Claim for Relief

The fifth claim for relief is titled "Recovery of Transfers under 11 U.S.C. § 550." As is

noted above, section 548(a)(1)(B) of the Bankruptcy Codes authorizes a trustee to avoid

constructively fraudulent transfers. Section 550 of the Bankruptcy Code authorizes a trustee to

recover property or the value of property if a transfer of such property was avoided. *See* Collier on Bankruptcy ¶ 550.01 (16th ed. 2024). The Defendant did not argue that this claim for relief should be dismissed, although the Court recognizes that there is a "stray" reference to section 547 of the Bankruptcy Code in this section of the Complaint. That Bankruptcy Code section, titled "Preferences," "is not concerned with fraudulent transfers" but instead "permits a trustee to avoid certain prebankruptcy transfers as 'preferences.'" *See* Collier on Bankruptcy ¶ 547.01. The Complaint does not allege sufficient facts to plausibly show that there were any preferential transfers that may be avoided.

At the Hearing, the Plaintiff conceded that it did not feel comfortable alleging that the Defendant was an insider and could not allege that the Transfers occurred within 90 days of the Petition Date. At least one of these facts would have been required to show that any of the Transfers were preferential under section 547 of the Bankruptcy Code. Therefore, the motion to dismiss the fifth claim for relief under Rule 12(b)(6) is granted without leave to amend as it relates to section 547 of the Bankruptcy Code and denied as to the remainder of the fifth claim for relief.

### F. Sixth Claim for Relief

The sixth claim for relief in the Complaint is titled "Reconciliation and Accounting / Turnover of Property of Estate under 11 U.S.C. § 542." Section 542 of the Bankruptcy Code provides,

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). This statute "invokes the court's most basic equitable powers to gather and manage property of the estate." *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009). Again,

the Defendant did not argue that this claim for relief should be dismissed and has failed to meet its

burden under the Federal Rule of Civil Procedure 12(b)(6). Therefore, the motion to dismiss the

sixth claim for relief under Rule 12(b)(6) is denied.

## CONCLUSION

For the reasons stated in this opinion, the Court **ORDERS** as follows:

1. The Motion is **GRANTED** without leave to amend as it relates to (a) the Criminal

   Usury Statute under the first and third claims for relief, (b) the fourth claim for relief,

   and (c) the fifth claim for relief as it relates to section 547 of the Bankruptcy Code;

2. The Motion is **GRANTED** with leave to amend as it relates to the second claim for

   relief; and

3. The Motion is **DENIED** as it relates to (a) the Rule 12(b)(1) Motion, (b) the remainder

   of the first and third claims for relief, (c) the remainder of the fifth claim for relief, and

   (d) the sixth claim for relief.

**IT IS SO ORDERED.**

**This Order has been signed electronically.**       **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**